

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**PRECISION MACHINING SERVICES,**            **PLAINTIFF**
**INC.**

**VS.**                **Civil Action No.** $\underline{3.17cv43HTW\text{-}LRA}$

**MACHINERY MARKETING**
**INTERNATIONAL, LLC**                **DEFENDANT**

### COMPLAINT

### (Plaintiff Demands Trial By Jury)

Plaintiff, Precision Machining Services, Inc. ("Precision"), by and through counsel, files this Complaint against Machinery Marketing International, LLC ("MMI") and in support thereof states as follows:

### JURISDICTION AND VENUE

1.    Pursuant to 28 U.S.C. § 1332(a), federal court jurisdiction over this matter is proper as the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. This court has supplemental jurisdiction over the state law claims in this matter pursuant to 28 U.S.C. §1367(a). This court may exercise personal jurisdiction over defendant MMI consistent with Miss. Code Ann. §13-3-57 because (i) the case concerns a contract which was performed, or to be performed, in whole or in part in Mississippi, (ii) MMI has committed torts in whole or in part in Mississippi, and (iii) MMI does business and/or performs, or has performed, work or services in Mississippi.

2.    Venue in this district is proper pursuant to 28 U.S.C. §1391, because (i) a substantial part of the events or omissions giving rise to the claim occurred in Hinds County,

Mississippi, which is in the Southern District, Northern Division, (ii) personal property subject to the Complaint is located in Hinds County, and (iii) defendant MMI purposefully availed itself of the jurisdiction of this district by negotiating and contracting via email and telephone with representatives of the Plaintiff who were at all relevant times located in the subject division.

## PARTIES

3.      Precision is a Tennessee corporation with its principal place of business in Chattanooga, Tennessee.   Precision is duly registered and authorized to transact business and file lawsuits in the State of Mississippi.

4.      Defendant MMI is an Illinois limited liability company with its principal place of business in Chicago, Illinois, and may be served with process upon its registered agent, Anthony R. Taglia, at 70 W. Madison Street, Suite 1500, Chicago, Illinois 60602.

## FACTS

5.      In August 2016, Precision contacted MMI's sales representative, Brett Fox, about purchasing two used Doosan Puma 300LC computer controlled lathing machines from MMI.

6.      On or about September 23, 2016, the parties entered into a purchase agreement (the "Agreement"), memorialized in part by Invoice #1629 (Exhibit "A"), which expressly provided that MMI would deliver two 2012 Doosan Puma 300LC machines bearing serial numbers ML00067-003714 and ML00067-003720 (the "Contract Machines") to Precision for a total contract price of $160,000.00 to be paid by wire transfer prior to shipment.

7.      By entering into the Agreement, MMI agreed that the specified Contract Machines would meet certain previously agreed upon specifications, including the requirement that the specified machines, while not new, would be in good working order.

2

8.      During the early contract negotiations, MMI sent Precision the specifications of the Contract Machines and photographs purporting to show their condition.  Notably, the photographs showed no signs of internal rusting or other defects that might interfere with the performance of the Contract Machines.

9.      Prior to tendering the purchase funds to MMI, Precision requested to inspect the Contract Machines, as it had a legal right to do.  MMI, however, advised Precision that the Contract Machines could not be powered up at the storage site(s), which meant that MMI knew that Precision would not be able to observe the operating performance of the Contract Machines prior to shipment. Accordingly, while the Invoice contains language stating that the equipment was to be purchased "as is," the "as is" clause, if enforceable at all under Mississippi law, does not preclude Precision from rejecting the non-conforming delivery and recovering damages from MMI in this case. The "as is" clause is clearly specific to the Contract Machines specified in the invoice, it has no application to the machines which were delivered, as those machines were not the ones specified in the invoice. Further, even if MMI had delivered the Contract Machines, because MMI knew that no reasonable inspection was possible prior to delivery, MMI would be equitably and/or legally estopped from asserting the "as is" language in the Invoice in an attempt to avoid MMI's obligation to deliver the Contract Machines in "good working order." Accordingly, Precision reasonably moved forward with the purchase relying on MMI's representation that MMI would deliver the two machines specified in the Invoice "in good working order."

10.      On October 3, 2016, Precision wired the purchase funds to MMI's account.

3

11.    On October 10, 2016, MMI delivered two machines to Precision, neither of which bore either of the serial numbers identified with the Contract Machines as specified in the Invoice.

12.    That same day, Precision emailed MMI's Mr. Fox, rejecting delivery and demanding that MMI refund all purchase money and reimburse it for the rigging, freight, and other expenses incurred as a result of MMI's delivery of the non-conforming machines (hereinafter the "Non-Conforming Machines").

13.    MMI refused to comply with Precision's request for a refund and instead reassured Precision that the Non-Conforming Machines—though bearing different serial numbers—were "comparable to" the Contract Machines, and MMI further represented that the machines delivered were "in good working order," and would serve Precision's purposes.

14.    Relying on MMI's representations, Precision opted to move forward on November 9, 2016, to determine if, in fact, the machines might be usable.  However, an inspection revealed that the Non-Conforming Machines were not "in good working order." Indeed, they were rusted internally beyond repair.

15.    Precision promptly notified MMI of its determination that the Non-Conforming Machines were inoperable and again requested MMI cure the problem and/or reimburse Precision for all purchase funds, expenses, and losses incurred.   Once again, MMI failed to comply with Precision's request.

16.    Precision, reasonably relying on MMI's representations (now shown to have been misrepresentations), put off efforts to purchase replacement machines and expended significant time and money to attempt to make use of the Non-Conforming Machines. Further, the delays

4

resulting from MMI's misrepresentations caused Precision to lose profits it could have made had MMI delivered the two Contract Machines as promised.

## COUNT I – Breach of Implied Warrant of Merchantability

17.    The allegations contained in paragraphs 1 through 16 are repeated and realleged as if fully set forth herein.

18.    At all relevant times, and pursuant to Chapter 2 of Mississippi's version of the Uniform Commercial Code, Miss. Code Ann. Section 75-2-101, *et. seq.* (Rev. 2002) (the "Mississippi UCC"), the Defendant was a merchant with respect to both the Contract Machines and the Non-Conforming Machines.

19.    Defendant failed to deliver the Contract Machines, and the Non-Conforming Machines which were delivered were not merchantable, i.e., *inter alia* were not fit for the ordinary purposes for which they were manufactured, and were not in good working order as required by the terms of the Agreement.

20.    Precision has suffered economic harm and damages as a direct, foreseeable and proximate result of MMI's breach of the implied warranty of merchantability with respect to the machines which are the subject of this lawsuit, and Precision is entitled to recover from MMI, the contract price, all resulting damages, and any and all other relief afforded by Mississippi UCC law and common law.

## COUNT II – Breach of Express Warranties of Merchantability and Fitness for Particular Purpose.

21.    The allegations contained in paragraphs 1 through 20 are repeated and realleged as if fully set forth herein.

22.     Defendant, MMI, in order to induce Precision to purchase the subject machines, affirmatively represented, that the Contract Machines were in good working order, and that they would be delivered in good working order.

23.     After the Non-Conforming Machines were delivered to Precision, Defendant MMI, in order to induce the Plaintiff to accept the Non-Conforming Machines, represented to Precision that the Non-Conforming Machines were comparable to the Contract Machines, that they were in good working order, and that they would serve Precision's particular purposes, which MMI knew and understood required very precise machine tolerances.

24.     Relying on MMI's express representations of merchantability and fitness for Precision's particular purposes, Precision expended time and money to attempt to make use of the Non-Conforming Machines.

25.     Precision has been damaged as a direct, foreseeable and proximate result of MMI's breaches of these implied warranties. Accordingly, Precision is entitled to recover from MMI for all economic harm and damages suffered by Precision as a result of Precision's reasonable reliance upon Defendant MMI's express misrepresentations regarding the merchantability of the Non-Conforming Machines and their fitness for Precision's particular purposes and any and all other relief afforded by Mississippi UCC law and common law.

**COUNT III – Breach of Implied Covenants of Good Faith and Fair Dealings.**

26.     Precision repeats and reasserts Paragraphs 1-25 as though fully set forth herein.

27.     Under Mississippi law, every contract carries with it implied covenants of good faith and fair dealings. Essentially, these covenants provide that each party to a contract will act in good faith and not prevent another party from realizing the benefit of their bargain.

6

28.     Defendant MMI breached this implied covenant by failing to deliver the machines specified in the contract, by failing to deliver machines in good working order, by failing to cure the non-conforming delivery, by misrepresenting to Precision that the machines which were delivered were comparable to the Contract Machines, and by misrepresenting to Precision that the machines delivered were in good working order and would serve Precision's purposes.

29.     Precision has been damaged as a direct, foreseeable and proximate result of MMI's breaches of the implied warranty of good faith and fair dealing. Accordingly, Precision is entitled to recover from MMI for all economic harm and damages suffered by Precision as a result of MMI's bad faith and unfair dealings, and for any and all other relief afforded by Mississippi UCC law and common law.

### COUNT IV – Breach of Contract

30.     Precision repeats and reasserts Paragraphs 1- 29 as though fully set forth herein.

31.     The Agreement is a valid and enforceable contract.

32.     Precision has fully performed all of its obligations under the Agreement.

33.     MMI has breached its obligations under the Agreement by delivering machines which were different from the Contract Machines identified in the Agreement, and by delivering machines which were not in good working order.

34.     MMI has further failed to comply with its obligations under the Agreement by failing to cure the defective delivery within a reasonable time.

35.     Accordingly, Precision is entitled to recover from MMI all economic losses and damages proximately suffered by Precision as a result of MMI's breach of the Agreement, and any and all other relief afforded by Mississippi UCC law and common law.

## COUNT V – Tortious Breach of Contract

36.     Precision repeats and reasserts Paragraphs 1- 35 as though fully set forth herein.

37.     MMI has purposefully, willfully, knowingly and tortiously breached the Agreement, and as a result, Precision is entitled to recover from MMI the purchase price and all resulting damages and expenses incurred by Precision, including reasonable attorney fees and litigation expenses. Precision is also entitled to recover punitive damages.

## COUNT VI – Fraudulent Misrepresentation

38.     Precision repeats and reasserts Paragraphs 1- 37 as though fully set forth herein.

39.     Both prior to Precision tendering the purchase money to MMI, and after Precision first notified MMI of its refusal to accept delivery of the Non-Conforming Machines, MMI's representatives made representations, which were both false and material, and which MMI's representatives either knew to be false or were ignorant of the truth. MMI intended that Precision would act upon MMI's representations, and in the manner reasonably contemplated. Precision was ignorant of the falsity of the representations, relied upon the statements being true, and had a right to rely on MMI's representations. Precision consequently and proximately suffered economic injury and losses.  In particular:

> a.  MMI's sales representative, Brett Fox, stated via email on August 26, 2016, that the Contract Machines were "the same machines as [Precision] first looked at";
>
> b.  Mr. Fox repeatedly asserted that MMI would deliver machines "in good working order";
>
> c.  MMI's President, Paul Zimmer, told Precision after delivery on the Non-Conforming Machines on October 10, 2016, that the machines which were

8

delivered were comparable to the Contract Machines and that they were in
good working order and would serve Precision's purposes.

40.    Upon information and belief, MMI's representatives knew, or were reckless in
failing to know, that each of these statements were false when they were made.

41.    Upon information and belief, MMI knew and intended that Precision would be
induced by MMI's misrepresentations to enter into the Agreement; that Precision would be
induced by MMI's subsequent misrepresentations to expend significant sums to test and evaluate
the Non-Conforming Machines in hopes of being able to use them; and that Precision, in reliance
on MMI's representations, would delay purchasing replacement machines, while it was
evaluating the Non-Conforming Machines.

42.    Precision reasonably relied on the false statements made by MMI and its
representatives.

43.        Precision's reasonable reliance on the misrepresentations directly and
proximately caused Precision to incur significant expenses and lost profits.

44.    Accordingly, Precision is entitled to recover from MMI all resulting damages,
including the original purchase price, attorney fees and expenses, and also punitive damages to
deter MMI from continuing its fraudulent business practices.

## COUNT VII – Negligent Misrepresentation

45.    Precision repeats and reasserts Paragraphs 1-44 as if fully set forth herein.

46.    MMI had a duty, as a seller of commercial machinery that could not reasonably
be fully inspected by the buyer prior to payment of the full purchase price and delivery to the
buyer, to give correct information about the machines that it was selling.

47.    Both prior to entering into the Agreement, and after Precision's rejection of the Non-Conforming Machines, MMI made several statements that were false, as described hereinabove.

48.    Upon information and belief, MMI and its representatives reasonably should have known that each of these statements was false.

49.    Precision reasonably relied on the false statements to its detriment.

50.    Accordingly, Precision is entitled to recover from MMI the full purchase price paid to MMI and all damages proximately resulting from MMI's negligent misrepresentations, and any and all damages afforded under Mississippi UCC law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

a.    Compensatory damages in an amount to be determined by a jury that would fully compensate Precision for its injuries caused by MMI's acts and/or omissions , including repayment to Precision of the purchase sums paid to MMI, Precision's lost profits, and all expenses incurred, including reasonable attorney fees, expenses and costs; and

b.    Punitive damages in an amount to be determined by a jury that would punish MMI for its wanton, willful, grossly negligent, and/or reckless conduct as alleged herein, and that would effectively discourage similar conduct in the future.

c.  Precision further requests any other general or special relief to which it may

be entitled, and as the court deems just and equitable.

Respectfully submitted,

**PRECISION MACHINING SERVICES, INC.**

By: _____

*Its Attorney*

OF COUNSEL:

Louis B. Lanoux (MSB No. 8480)
Betty Ruth Fox (MSB No. 8360)
WATKINS & EAGER PLLC
400 East Capitol Street
Jackson, Mississippi  39201
Post Office Box 650
Jackson, Mississippi  39205-0650
Telephone:    (601) 965-1900
Facsimile:    (601) 965-1901
Email: llanoux@watkinseager.com
        bfox@watkinseager.com